UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Irma R. Escalera,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

19-CV-21 HBS
(Consent)

_____

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 9, 14.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.    DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the ALJ's decision to give little weight to any opinions offered by any of plaintiff's treatment providers. The ALJ found that plaintiff had the severe impairments of bipolar disorder, lumbago, and obesity. [16.] After considering plaintiff's clinical records, the ALJ decided that plaintiff had an RFC for light work with some nonexertional limitations. [18.] In reviewing opinions from treatment providers, the ALJ decided that one of plaintiff's counselors, Margaret Gibb, was not an acceptable medical source; provided her opinion only in a checkbox list form; and was inconsistent with other clinical records anyway. [23.] The ALJ gave little weight to opinions from plaintiff's primary care provider, John Kucera, MD, because "the checkbox list nature of the form decreases the probative value of the source statement. Moreover, Dr. Kucera admits that he does not know if the claimant is a malingerer, and he indicated that he only saw the claimant on two occasions before completing the form, factors that also decrease the persuasiveness of the limitations given. Further, the severe nature of the limitations given by Dr. Kucera are generally inconsistent with the record as a whole, including the claimant's conservative treatment history and normal imaging, the claimant's ability to work at substantial gainful activity levels with her back pain prior to her alleged onset date, the claimant's normal gait and strength and intact attention and concentration, and the extent of the claimant's daily activities, suggesting the ability to perform the range of light work described above." [24.] The ALJ gave great weight to one consultative physical examiner and one consultative psychological examiner. [24.] Plaintiff argues that the ALJ should have given more consideration to the checkbox opinions or at least should have sought assessments in narrative form:

4

> If the ALJ felt that any sort of narrative was lacking due to the opinion format, the ALJ could have contacted Dr. Kucera and Ms. Gibb for clarification of their opinions when compiling the RFC. *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *4 (W.D.N.Y. Mar. 15, 2019) ("If the ALJ felt the form lacked sufficient narrative, he could have contacted Dr. Hartman and requested additional information."); *Puckhaber v. Berryhill*, No. 17-CV-576, 2019 WL 1316685, at *4 (W.D.N.Y. Mar. 22, 2019) ("Likewise, if the ALJ had concerns about whether the boxes checked on a form adequately addressed the findings indicated by the checked boxes, it was incumbent on the ALJ to inquire further and not simply to dismiss the 'check-box' findings."). However, the evidence of record is clear in the fact that the ALJ made no such attempt to contact Dr. Kucera or Ms. Gibb for additional comments when rendering the RFC determination.
>
> Furthermore, the disability decision also evidences the ALJ rejecting Ms. Gibb's opinion based on the fact that she is not considered "an acceptable medical source." (Tr. 19). Licensed social workers and mental health counselors are not "acceptable medical sources" *See* 20 C.F.R. § 416.913(d) (1); SSR 06-3p. However, they are included among the "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. *See Id.* An ALJ should not reject them "out of hand." *Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013). While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. *Pogozelski v. Barnhart*, No. 03–CV–2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); *White v. Comm'r of Soc. Sec.*, 302 F. Supp. 2d 170, 174–76 (W.D.N.Y. 2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist). Likewise, "non-acceptable" sources with "particularly lengthy treating relationship[s]" are given greater weight. *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 183 (E.D.N.Y. 2011). Therefore, Ms. Gibb's status as "non-acceptable medical source" should not have automatically decreased or reduced the probative value of her treating source opinion, especially since the record reflects that Ms. Gibb has been a long time treating source, having been involved in Plaintiff's treatment since November 2014. (Tr. 356).

(Dkt. No. 9-1 at 21–23; see also Dkt. No. 15 at 2.)

The Commissioner defends how the ALJ assessed the record. The Commissioner notes that "the information and allegations provided by Plaintiff may not be entirely reliable due to her numerous inconsistencies (T18-20). For example, she claimed she took medications as directed, but

5

she often missed doses of medication, did not pick up medications, and told Ms. Gibb that she only took medications when she wants to and did not care if she missed doses (T337-339, 497, 519). At the hearing, Plaintiff even denied she had a drinking problem and denied anyone had suggested she had that problem (T70). However, the record shows she has a long history of heavy drinking and alcohol abuse, was on probation for a DWI conviction, and failed alcohol tests when on probation and was referred to DUI court (T301, 326, 355, 416)." (Dkt. No. 14-1 at 25–26.) The Commissioner then highlights the problems with Dr. Kucera's checkbox opinions:

> With respect to Dr. Kucera's opinion, the ALJ set forth multiple good reasons in support his decision to give that opinion little weight (T20). First, the ALJ noted that while the doctor was Plaintiff's primary care provider, his opinion was contained on a checkbox opinion form (T20, 737-741). Opinions that are essentially "form reports composed of checklists and fill-in-the-blank statements," are "by their nature, of limited evidentiary value." *Camille v. Colvin*, 104 F. Supp. 3d 329, 341 (W.D.N.Y. 2015), *aff'd*, 652 Fed. App'x 25 (2d Cir. 2016). The ALJ also considered that Dr. Kucera indicated that he had seen Plaintiff only twice (T20, 737; *see* T995 (June 28, 2017), 992 (August 23, 2017)).
>
> "[A] physician's medical opinion was not entitled to the extra weight of a treating physician" where the physician "only examined [the] claimant once or twice . . . ." *Petrie v. Astrue*, 412 Fed. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039, n.2 (2d Cir. 1983). And the ALJ pointed out that the doctor admitted that he did not know if Plaintiff was a malingerer (T737).
>
> Further, the ALJ considered that the extensive limitations marked on the form were generally inconsistent with the record and Plaintiff's conservative treatment and normal diagnostic imaging (T20; *see, e.g.*, T424 (x-rays were unremarkable ), 733 (x-rays found no abnormalities), 1011 (injections after a fall), 1014 (told to return to PT, use ice, and take medication), 1026 (previous MRI and x-rays showed just a slight annular bulge or were unremarkable)). The ALJ expressly pointed to inconsistencies on the form completed by Dr. Kucera and his clinical notes from his exam that dame day (T20). On the form, he stated she had restricted lumbar ROM (T737, 738). But his exam report that same day showed Plaintiff had normal lumbar ROM (T993). He checked the form to indicate she had an abnormal gait and stated there was spinal tenderness at L3-5 (T738). However, his clinical notes that day stated she ambulated normally and made no mention of any spinal tenderness (T993). *See Heil v. Comm'r of Soc. Sec.*, No. 16-CV-6653-FPG, 2017 WL 5467714, at *5 (W.D.N.Y. Nov. 14, 2017) (finding that the ALJ provided the requisite "good reasons" for discounting a treating source's opinions where the opinions were generally inconsistent with objective findings in the record and with

> the source's own physical examinations). It is precisely the role of the ALJ to compare a medical opinion to the record as a whole, including, of course, the provider's own treatment notes, and to discount the opinion to the extent inconsistent with such evidence. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017) ("Not only did the ALJ find [the doctor's] medical source statement contained internal inconsistencies, but she also determined that his treatment notes contradicted his RFC assessment.").

(*Id.* at 26–28.)

Plaintiff has the better argument at this time, for two reasons. First, the Court is concerned that the ALJ simultaneously found a psychiatric disorder as a severe impairment; faulted plaintiff at least twice for noncompliance with medication and treatment sessions; noted a history of substance abuse; but did not follow up with treatment sources to supplement checkbox questionnaires that are admittedly thin on details. "Courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Cornell v. Astrue*, No. 7:11-CV-1064 (GTS), 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013) (internal quotation marks and citation omitted). The record contains instances, some of which plaintiff has cited, of multiple psychiatric problems that might have affected plaintiff's ability to follow treatment and her overall mental health profile. For example, plaintiff reported in April 2014 that she had a history of suffering domestic violence and abuse; of audio hallucinations of a man's voice yelling at her; and of coping with the abuse and hallucinations through alcohol abuse and "head-banging/self-harm." [302.] During an evaluation on June 17, 2014, plaintiff reported alcohol abuse and audio hallucinations with a sporadic medication history. [328.] Plaintiff also reported an unspecified number of suicide attempts in the past and a significant number of psychiatric issues among family members including schizophrenia and suicide attempts. [330.] Audio hallucinations and substance abuse continued into 2015. [373.] Plaintiff had a verbally abusive outburst at a counselor during a session in April 2015, prompted by nothing more than an interruption by a lab courier. [404.] The

7

consultative psychologist who evaluated plaintiff just two months later mentioned plaintiff's legal issues and substance abuse but described "no evidence of hallucinations" and made no mention of the history of suicide attempts. [420.] Considering that the ALJ found a psychiatric disorder to be a severe impairment, plaintiff's history of substance abuse possibly would require an analysis under 20 C.F.R. §§ 404.1535(b) or 416.935(b) even if her psychiatric problems were considered disabling. These citations and others by plaintiff indicate significant psychiatric problems that require further exploration, yet the ALJ chose to criticize plaintiff twice for noncompliance [19, 22] and to place great weight on a single psychological examination that concluded that plaintiff has "a psychiatric condition with mild residual symptomology." [422.] *Cf. Mnich v. Colvin*, No. 514CV740 DNHCFH, 2015 WL 7769236, at *27 (N.D.N.Y. Sept. 8, 2015) ("An ALJ is permitted to consider a plaintiff's noncompliance with treatment in weighing the plaintiff's credibility. However, here, there is an indication that plaintiff's mental health impairments had at least some impact on plaintiff's missing appointments. The ALJ did not assess whether this noncompliance could possibly have been caused by plaintiff's mental conditions."), *report and recommendation adopted*, No. 5:14-CV-740, 2015 WL 7776924 (N.D.N.Y. Dec. 2, 2015). The absence of a more detailed medical source statement or other opinion is not automatically fatal to an agency determination, *see Tankisi v. Comm'r*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (summary order), but having that opinion becomes important to resolve discrepancies as large as the ones in this case. *See Swiantek v. Comm'r*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (ALJ affirmed in part because assessment of psychiatric limitations was based on one consultative examination plus "multiple psychological assessments" in the record); *see also Camilo v. Comm'r of the Soc. Sec. Admin.*, No. 11 CIV. 1345 DAB MHD, 2013 WL 5692435, at *22 (S.D.N.Y. Oct. 2, 2013) ("However, it is the ALJ's duty to develop the record and resolve any

8

known ambiguities, and that duty is enhanced when the disability in question is a psychiatric impairment.") (citations omitted).

There is the additional problem that finances might have affected plaintiff's treatment history. For example, plaintiff reported in June 2015 that she was evicted from her home and could not find a bed at local homeless shelters. [448.] Citations in the record such as this one should have sufficed to prompt the ALJ to consider, or at least to rule out explicitly, whether access to necessary services affected plaintiff's treatment history. *See* SSR 16-3p, 2016 WL 1020935, 81 FR 14166-01, at *14170 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."). "It would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *accord Burger v. Astrue*, 282 Fed. App'x 883, 884 (2d Cir. 2008) (summary order) ("In this case, however, Burger offered an explanation for her decision to seek only occasional emergency treatment: she was uninsured and could not pay for regular medical care.").

Under these circumstances, remand will be necessary to develop a more complete record about plaintiff's psychiatric limitations. In ordering remand, the Court takes no position on what any medical opinion should say about plaintiff's psychiatric limitations; whether any medical opinion should alter the current RFC; or whether an analysis of substance abuse will become necessary in the event that plaintiff's psychiatric limitations are considered disabling. The Court further will not address any of the other issues that the parties have raised. The Commissioner is free to revisit any other issues as might be appropriate.

## III.     CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 14). The Court grants plaintiff's cross-motion (Dkt. No. 9) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                  */s Hugh B. Scott*  
                                                  Hon. Hugh B. Scott  
                                                  United States Magistrate Judge

DATED: May 13, 2020